## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI

THE CINCINNATI SPECIALTY    )
UNDERWRITERS INSURANCE    )
COMPANY,    )
A Delaware Corporation,    )
    )
      Plaintiff,    )
    )
v.    )
    )
    )    Case No._____
THE GREATER KANSAS CITY    )
SPORTS COMMISSION,    )
a Missouri Non-Profit Corporation,    )
Serve: Registered Agent, Kathy Nelson    )
1100 Walnut St., Suite 3450B    )
Kansas City, MO 64106    )
    )
UNION STATION KANSAS CITY, INC.,    )
a Missouri Non-Profit Corporation,    )
Serve: National Registered Agents, Inc.,    )
5661 Telegraph Road, Suite 4B    )
St. Louis, Missouri 63129,    )
    )
THE CITY OF KANSAS CITY, MISSOURI    )
Serve: City Hall Law Department    )
414 East 12th Street, 23rd Floor    )
Kansas City, MO 64106,    )
    )
KELI WENZEL D/B/A    )
O'NEILL EVENTS AND MARKETING    )
Serve: Keli Wenzel    )
1607 Oak Street    )
Kansas City, Missouri 64108,    )
    )
FLYOVER EVENT CO., LLC    )
Serve Member: Christopher M. Phelan    )
10685 Riggs Drive    )
Overland Park, Kansas 66212,    )
    )

MICHAEL GALVAN, individually;                    )
Serve: 12019 W 47th Street                       )
Shawnee, Kansas 66216,                           )
                                                 )
MARC LOPEZ-GALVAN, individually;                 )
Serve: 12019 W 47th Street                       )
Shawnee, Kansas 66216,                           )
                                                 )
And                                              )
                                                 )
ADRIAN LOPEZ-GALVAN, Individually;               )
Serve: 12019 W 47th Street                       )
Shawnee, Kansas 66216                            )
                                                 )
       Defendants.                                  )

## COMPLAINT FOR DECLARATORY JUDGMENT

The Cincinnati Specialty Underwriters Insurance Company ("Cincinnati"), by and through undersigned counsel, for its Complaint for Declaratory Judgment, states as follows:

## NATURE OF CASE

1.     This is a declaratory judgment action brought pursuant to 28 U.S.C. §§ 2201, 2202, and Fed. R. Civ. P. 57 to determine Cincinnati's rights and obligations under a commercial general liability insurance policy ("the Cincinnati Policy or Policy") it issued to The Greater Kansas City Sports Commission ("GKCSC").

2.     An actual and justifiable controversy exists between the parties. This action will resolve a dispute as to whether the Cincinnati Policy provides coverage to GKCSC as well as Union Station Kansas City Inc. ("Union Station"); The City of Kansas City, Missouri ("City"); O'Neill Events & Marketing ("O'Neill"); and Flyover Event Co. LLC ("Flyover") in connection with the underlying lawsuit ("Underlying Lawsuit") filed on June 18, 2025 by Michael Galvan

2

("M. Galvan"), Marc Lopez-Galvan (M. Lopez-Galvan), and Adriana Lopez-Galvan ("A. Lopez-Gavan") (collectively referenced to in this Pleading as "Underlying Plaintiffs") against GKCSC, Union Station, the City, O'Neill, and Flyover. *Michael Galvan, et al., v. Union Station Kansas City, Inc., et al.*, Case No.: 2516-CV19394, (Circuit Court of Jackson County, Missouri).

3.      The Underlying Lawsuit seeks damages for the alleged injuries sustained by the Underlying Plaintiffs, including a count for battery causing the wrongful death of Lisa Lopez-Galvan, who was ultimately killed by gunshot wounds(s), and M. Lopez-Galvan who was allegedly shot at the Kansas City Chiefs Super Bowl Rally on February 14, 2024 by Dominic Miller, Lyndell Mays, Terry Young, and/or three unnamed individuals referred to in the Underlying Lawsuit as John Doe 1, John Doe 2, and John Doe 3 (collectively referenced in this pleading as "Shooting Defendants").

4.      The Underlying Petition names Defendants: Fedo Antonia Manning, Ronnel Dewayne Williams Jr., and Chaelyn Hendrick Groves, all individually, for their alleged conduct leading to the death of Lisa Lopez-Galvan by gunshot wounds sustained at the February 14, 2025 Chiefs' rally.

## PARTIES, JURISDICTION, VENUE

5.      The Cincinnati Specialty Underwriters Insurance Company is a registered Delaware corporation with its principal place of business in Fairfield, Ohio.

6.      Cincinnati resides in Delaware and Ohio, and is domiciled in Ohio.

7.      The Greater Kansas City Sports Commission is a Missouri non-profit corporation and is incorporated in Missouri with its principal place of operation/business in Missouri. The

GKCSC may be served via its registered agent, Kathy Nelson at 1100 Walnut St., Ste. 3450B, Kansas City, Missouri 64106.

8.     Union Station Kansas City, Inc. is a Missouri non-profit corporation organized under the laws of Missouri and is incorporated in Missouri with its principal place of operation/business in Missouri. Union Station may be served with process via its registered agent, National Registered Agents, Inc., at 5661 Telegraph Road, Suite 4B, St. Louis, Missouri 63129.

9.     The City of Kansas City, Missouri is a Missouri Charter City, and may be served with process at City Hall Law Department, 414 East 12th Street, 23rd Floor Kansas City, Missouri 64106.

10.     O'Neill Events & Marketing, a fictitious name registered with the State of Missouri, and sole owner of O'Neill, Keli Wenzel, may be served with process at 1607 Oak Street, Kansas City, Missouri 64108. Keli Wenzel is an individual who is a citizen and resident of Missouri. Keli Wenzel is domiciled in Missouri.

11.     Flyover Event Co., LLC is a limited liability company organized under the laws of the State of Kansas, and is a citizen and resident of the State of Kansas. Flyover may be served with process via its Registered Agent, Christopher M. Phelan at 10685 Riggs Drive, Overland Park, Kansas 66212. Christopher M. Phelan is the only known member of Flyover. Christopher Phelan is an individual who is a citizen and resident of Kansas. Christopher M. Phelan is domiciled in the State of Kansas.

12.     Michael Galvan is a citizen and resident of the State of Kansas, as well as domiciled in Kansas, and can be served at 12019 W 47th Street, Shawnee, Kansas 66216. As the surviving spouse of Lisa Lopez-Galvan, Michael is a Tier I claimant under Missouri's wrongful death statute.

13.     Marc Lopez-Galvan is a citizen and resident of the State of Kansas, as well as domiciled in Kansas, and can be served at 12019 W 47th Street, Shawnee, Kansas 66216. As a child of Lisa Lopez-Galvan, Marc is a Tier I claimant under Missouri's wrongful death statute.

14.     Adriana Lopez-Galvan is a citizen and resident of the State of Kansas, as well as domiciled in Kansas, and can be served at 12019 W 47th Street, Shawnee, Kansas 66216. As a child of Liza Lopez-Galvan, Adriana is a Tier I claimant under Missouri's wrongful death statute.

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of costs, interest, and attorney's fees and there exists complete diversity of citizenship.

16.     Venue is proper under 28 U.S.C. § 1391(b)(2) because the events giving rise to this lawsuit occurred in this Federal District.

## **FACTUAL BACKGROUND**

### **The Cincinnati Policy**

17.     Cincinnati issued GKCSC a special event commercial general liability insurance policy, Policy No. CSU0225122, with a policy period from February 12, 2024, to February 17, 2024, and limits of insurance of $1,000,000 each occurrence, $5,000,000 general aggregate. ("the Cincinnati Policy"). A certified copy of the Cincinnati Policy is attached as Exhibit A and is incorporated into this Complaint as if fully set forth herein.

18.     The coverage provided by the Cincinnati Policy is subject to its terms, conditions, endorsements, limitations, and exclusions.

19.     The Insuring Agreement of Coverage A of the Cincinnati Policy, Form CG 00 01 04 13, states in pertinent part as follows:

1. **Insuring Agreement**

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]

        (2)    The "bodily injury" or "property damage" occurs during the policy period; . . .

(*See,* Ex. A, at p. 21).

20.    The Cincinnati Policy defines "bodily injury" and "occurrence" as follows:

    **3.**    "Bodily injury" means bodily injury, sickness, or disease sustained by a person, including death resulting from any of these at any time.

        . . .

    **13.**    "Occurrence" means an accident, including continuous or repeated exposure to the same general harmful conditions.

(*See,* Ex. A, at pp. 33 & 35).

21.    The Cincinnati Policy defines "you," "your," and "insured" as follows:

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. . . .

The word "insured" means any person or organization qualifying as such under Section **II** – WHO IS AN INSURED.

6

(*See,* Ex. A, at p. 21).

22. The "Who Is An Insured" provision of Form CG 00 01 04 13 of The Cincinnati Policy states in pertinent part as follows:

**SECTION II - WHO IS AN INSURED**

1. If you are designated in the Declarations as: . . .

    b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

    c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers. . . .

    d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(*See,* Ex. A, at p. 30).

23. The "Who Is An Insured" provision of Form CG 00 01 04 13 of The Cincinnati Policy is modified by an Endorsement Form CSGA 434 11 08 ("Additional Insured Endorsement"), which states in pertinent part as follows:

A. **SECTION II - WHO IS AN INSURED** is amended to include as an insured any person or organization described in Paragraph **B.** below (hereinafter referred to as additional insured) whom you are required to add as an additional insured under this Coverage Part by reason of a written contract or agreement is an insured, provided:

    1. The written contract or agreement is:

        a. Currently in effect or becomes effective during the policy period; and
        b. Executed prior to an "occurrence" or offense to which this insurance would apply; and

7

**2.** They are not specifically named as an additional insured under any other provision of, or endorsement added to, this Coverage Part.

**B.** Only the following persons or organizations are additional insureds under this endorsement, but only with respect to liability caused, in whole or in part, by your acts or omissions or the acts or omissions of those acting on your behalf. Insurance coverage provided to such additional insureds is limited as provided herein:

**1.** The manager or lessor of a premises leased to you with whom you have agreed per Paragraph **A.** above to provide insurance, but only with respect to the ownership, maintenance or use of that part of a premises leased to you, subject to the following additional exclusions:

This insurance does not apply to:

    **a.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

    **b.** Structural alterations, new construction or demolition operations performed by or on behalf of such additional insured.

**2.** Any person or organization from which you lease equipment with whom you have agreed per Paragraph **A.** above to provide insurance. However, this insurance does not apply to any "occurrence" which takes place after the equipment lease expires.

**3.** Any state or political subdivision which you have agreed per Paragraph **A.** above to provide insurance, subject to the following additional provision:

This insurance applies only with respect to the following hazards for which the state or political subdivision has issued a permit in connection with premises you own rent or control and to which this insurance applies:

    **a.** The existence, maintenance, repair, construction, erection or removal of advertising signs, awnings, canopies, cellar entrances, coal holes, driveways, manholes, marquees, hoist away openings, sidewalk vaults, street banners, or decorations and similar exposures; or

    **b.** The construction, erection, or removal of elevators; or

    **c.** The ownership, maintenance, or use of any elevators covered by this insurance.

**C.** With respect to the insurance afforded to these additional insureds, **SECTION III – LIMITS OF INSURANCE** is amended to include:

8

The limits applicable to the additional insured are those specified in the written contract or agreement or in the Declarations of this Coverage Part, whichever is less. If no limits are specified in the written contract or agreement, the limits applicable to the additional insured are those specified in the Declarations of this Coverage Part. The limits of insurance are inclusive of and not in addition to the limits of insurance shown in the Declarations.

**D.** With respect to the insurance afforded to these additional insureds, **SECTION IV – COMMERCIAL GENERAL LIABILITY CONDITIONS, 4. Other Insurance** is amended to include:

Any coverage provided herein will be excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or on any other basis unless you have agreed in a written contract or written agreement executed prior to any loss that this insurance will be the primary. This insurance will be noncontributory only if you have so agreed in a written contract or written agreement executed prior to any loss and this coverage is determined to be primary.

(*See,* Ex. A, at p. 62 – 63).

24. The Cincinnati Policy includes the Exclusion – Assault Or Battery Endorsement, Form CSGA 301 02 21 ("the Assault or Battery Exclusion"), which states in pertinent part as follows:

**A.** The following exclusion is added to Paragraph **2., Exclusions** of **Section I – Coverage A - Bodily Injury And Property Damage Liability and** Paragraph **2., Exclusions** of **Section I - Coverage B - Personal And Advertising Injury Liability:**

**Assault Or Battery**

This insurance does not apply to "bodily injury" . . . that in any way, in whole or in part, arises out of an actual, threatened or alleged:

**1.** Assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person;

**2.** The failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or

3.  The failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery; or

4.  Failure to render or secure medical treatment or care necessitated by any assault or battery; or

5.  Negligent investigation or reporting or failure to report any assault or battery to proper authorities; or

6.  The negligent:

    a.  Employment;

    b.  Supervision;

    c.  Training;

    d.  Retention;

    of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the **Assault Or Battery exclusion** above . . . .

C.  Exclusion **2.a.** of the Commercial General Liability Coverage Form is deleted in its entirety and replaced by the following:

**2.  a.  Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

(*See,* Ex. A, at p. 74).

### The Underlying Lawsuit

25.  Underlying Plaintiffs commenced the Underlying Lawsuit on June 18, 2025. The Underlying Lawsuit's Petition ("Petition"), as originally filed, named Dominic Miller; Lyndell Mays; Terry Young; John Doe 1; John Doe 2; John Doe 3; Fedo Antonia Manning; Ronnel Dewayne Williams, Jr.; Chaelyn Hendrick Groves; Union Station; the City; GKCSC; O'Neill;

Flyover; Frontier Justice LS, LLC; The Ammo Box LLC; and R.K Shows MO Inc. A true and correct copy of the Petition is attached as Exhibit B hereto.

26. While the Petition brings forth several counts against other named parties including Shooting Defendants (Battery and Battery - Wrongful death); Frontier Justice LS, LLC; Fedo Antonia Manning; Ammo Box LLC; Ronnel Dewayne Williams, Jr.; and Chaelyn Hendrick Groves (Negligent Entrustment and Negligent Entrustment – Wrong Death); Frontier Justice LS, LLC; R.K. Shows MO Inc.; and Ammo Box LLC (Negligence and Negligence – Wrongful Death), this Complaint for Declaratory Judgment focuses on the Underlying Plaintiffs' claims against Union Station; the City; GKCSC; O'Neill; and Flyover.

27. The Petition alleges a count of Premises Liability and a count of Premises Liability – Wrongful Death against GKCSC; O'Neill; Flyover (together referenced as "Event Planning Defendants"); Union Station and the City (together referenced as "Premises Defendants").

28. The Petition alleges that February 14, 2024, the Shooting Defendants discharged their firearms into a crowd of rally attendees. Petition ¶ 82.

29. The Petition claims that around half-a-dozen gunmen fired an estimated forty shots at each other and into the crowd; twenty-two (22) people were shot, including Underlying Plaintiff M. Lopez-Galvan and Lisa Lopez-Galvan, ultimately Lisa Lopez-Galvan was killed from the gunshots. Petition ¶ 1.

30. The Petition alleges that the foregoing conduct by the Shooting Defendants was with the intent to injure, maim, or kill M. Lopez-Galvan, Lisa Lopez-Galvan, and/or other rally attendees. Further, it is alleged that each shot that struck Lisa Lopez-Galvan and M. Lopez-Galvan was an intended, harmful, and offensive bodily contact. Petition ¶ 84 and ¶ 90.

11

31.     The Petition clearly alleges that the actions of the Shooting Defendant to discharge their firearms and/or weapons into a crowd of people was intentional.

32.     The Petition argues that as a direct a result of the defendants including Premises Defendants and Event Planning Defendants' wrongful actions and omissions, the Underlying Plaintiff M. Lopez-Galvan, who was allegedly shot in the lower abdomen, has suffered and will continue to suffer, damages that include but are not limited to past and future medical, hospital, and life care expenses; emotional and physical distress; and loss of enjoyment of life.  Petition ¶ 146.

33.     The Petition argues that as a result of the defendants' wrongful actions which caused the homicide of Lisa Lopez-Galvan, Underlying Plaintiffs are requesting damages for funeral and health care expenses; pecuniary losses, including the continuing loss of income Lisa Lopez-Galvan would have earned; and the loss of service, consortium, companionship, instruction, guidance, counsel, training, and support from Lisa Lopez-Galvan. Petition ¶ 157.

34.     The Petition argues that Premises Defendants and Event Planning Defendants should have foreseen the mass shooting due to the alleged "many instances of gun violence at and around Union Station and the World War I grounds that there was a high risk of gun violence at the rally." Petition ¶ 66. Thus, Premises Defendants and Event Planning Defendants knew or should have known the consequences of inadequate security measures.

35.     The Petition alleges that "defendants knew or should have known of the high probability of violence during the rally based on the history of violent incidents in and around the premises." Petition ¶143.

36.     The Petition alleges that Premises Defendants and Event Planning Defendants "knew or should have known of a high probability of violence during the rally due to a history of violent incidents at mass gathering events." Petition ¶ 144.

37.     The Petition alleges that Premises Defendants and Event Planning Defendants failed to implement adequate security measures to protect the thousands of attendees who gathered in front of Union Station despite the well-documented risks associated with large public gatherings and the heightened concerns surrounding gun violence in Kansas City.

38.     The Petition alleges that at all relevant times, Premises Defendants and Event Planning Defendants owned, occupied, and/or controlled the premises of the rally, including the grounds of Union Station and the World War I Museum where the shooting occurred.

39.     The Petition alleges that Underlying Plaintiffs were all invitees of the Premises Defendants and Event Planning Defendants at all relevant times.

40.     The Petition further alleges that the Premises Defendants and Event Planning Defendants owed duties to 1) make the subject premises reasonably safe for Plaintiff and other attendees, and 2) to exercise ordinary care to protect Plaintiff and other attendees from foreseeable risks of harm and violence.

41.     The Petition alleges Count VII Premises Liability against the Premises Defendants and Event Planning Defendants alleging that they failed to exercise ordinary care by engaging in acts and omissions that include, but are not limited to:

a.     Failing to establish screening protocols for incoming attendees;

b.     Failing to impose meaningful limitations on access to the rally, such as ticketing requirements;

c.     Failing to utilize scanning technologies such as metal detectors to check attendees for prohibited items;

d.     Failing to utilize fencing or other security barriers to limits access to the rally;

e.     Failing to adequately communicate that firearms were not permitted at the rally;

f.     Failing to adequately limit the items that attendees could bring to the rally;

g.     Failing to implement a "clear bag policy" or equivalent policy;

h.     Failing to staff the grounds with an adequate number of trained security personnel;

i.     Failing to maintain and utilize adequate crowd management controls; and

j.     Failing to utilize, maintain, and communicate evacuation and exit plans for rally attendees.

42.     The Petition argues that as a direct and proximate result of the Premises and Event Planning Defendants' wrongful actions and omissions, M. Lopez-Galvan suffered and will continue to suffer, damages that include but are not limited to past and future medical, hospital, and life care expenses; emotional and physical distress; and a loss of enjoyment of life.

43.     The Petition also alleges a count of Premises Liability – Wrongful Death, for the homicide of Lisa Lopez-Galvan, against the Premises Defendants and Event Planning Defendants.

44.     The Petition further alleges that Premises and Event Planning Defendants owed a duty to Plaintiff Lisa Lopez-Galvan and all other attendees to make the premises reasonably safe,

and a duty to exercise ordinary care to protect Lisa Lopez-Galvan and other attendees from foreseeable risks of harm and violence.

45.     The Petition alleges Premises Defendants and Event Planning Defendants failed to exercise ordinary care to by engaging in acts and omissions that include, but are not limited to:

    a.     Failing to establish screening protocols for incoming attendees;

    b.     Failing to impose meaningful limitations on access to the rally, such as ticketing requirements;

    c.     Failing to utilize scanning technologies such as metal detectors to check attendees for prohibited items;

    d.     Failing to utilize fencing or other security barriers to limit access to the rally;

    e.     Failing to adequately communicate that firearms were not permitted at the rally;

    f.     Failing to adequately limit the items that attendees could bring to the rally;

    g.     Failing to implement a "clear bag policy" or equivalent policy;

    h.     Failing to staff the grounds with an adequate number of trained security personnel;

    i.     Failing to maintain and utilize adequate crowd management controls; and

    j.     Failing to utilize, maintain, and communicate evacuation and exit plans for rally attendees.

46.     The Petition argues these wrongful acts and omission by Premises and Event Planning Defendants were an alleged proximate cause of Lisa Lopez-Galvan's death.

47.     The Petition seeks an unspecified sum of damages for the Underlying Plaintiffs' injuries. According to the Petition, these damages include past and future medical, hospital, and life care expenses; loss of enjoyment of life; emotional and physical distress; funeral expenses; pecuniary losses; Court costs, and pre- and post-judgment interest.

**<u>No Indemnity or Defense is Owed by Cincinnati</u>**

48.     As noted above, the Underlying Plaintiffs filed their Petition for Damages on June 18, 2025.

49.     With respect to GKCSC, GKCSC is the named insured pursuant to The Cincinnati Policy.

50.     With respect to the City, Union Station, O'Neill, and Flyover, these parties are not named insureds pursuant to the Cincinnati Policy.

51.     Cincinnati is aware of an agreement ("Venue Agreement"), effective on February 12, 2024, between GKCSC and Union Station, whereby GKCSC paid Union Station for use and access of the premises for the Rally.   A true copy of the Venue Agreement is attached as Exhibit C.

52.     Pursuant to the Venue Agreement, GKCSC was required, in part and in certain circumstances, to procure and maintain insurance throughout the life of the Venue Agreement. Specifically the Venue Agreement (referring to GKCSC as "KCSC" and Union Station as "USKC") requires:

- KCSC agrees that it shall have and maintain liability insurance in such types and amounts required by USKC, naming USKC as an additional insured on such insurance policies.   KCSC shall provide US with a Certificate of Coverage to USKC's satisfaction prior to executing this Agreement.

- Kansas City Sports Commission shall procure a Special Event Liability Insurance (or similar CGL policy) with limits of $1,000,000 per occurrence and $5,000,000 in the aggregate, other than completed operations, and written on an "occurrence" basis. Damage to premises coverage of $500,000.

- The Commercial Special Event Liability Insurance (or similar CGL Policy) specified above shall provide that CONTRACTOR/VENDOR be named as additional insured for the services performed under this contract

53.    Furthermore, the Venue Agreement contains a reciprocal indemnity provision as follows:

- Without limitation to any other provision herein, KCSC hereby agrees to indemnify and hold harmless US, its affiliates and its employees, agents or representatives, against and from any and all liabilities; claims, demands, damages penalties, loss, cost or judgment (including without limitation, all costs of investigation, legal fees, and the cost of enforcing this indemnity) arising out of or resulting from KCSC's including without limitation any personal injury and/or property damage claims or any loss whatsoever incurred by US resulting in any way from KCSC's failure to comply with any of the terms under this Agreement. . . .

54.    With respect to Union Station, Cincinnati has determined that Union Station qualifies as an additional insured pursuant to Additional Insured Endorsement of the Cincinnati Policy.  Cincinnati also presumed, at least for the purposes of its duty to defend determination, that the allegations of the Petition satisfy the Insuring Agreement of Coverage A of the Cincinnati Policy.  Notwithstanding, to the extent the Policy offers coverage to Union Station on an additional insured basis, such coverage is subject to all other terms, conditions, limitations, and exclusions contained in the Policy.

55.    Paragraph D of the Additional Insured Endorsement expresses that any additional insured coverage provided by the Policy is excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or any other basis unless the GKCSC agreed in the Venue Agreement that the Policy's additional insured coverage would

be primary. The Venue Agreement does not express that the required special event liability policy or similar commercial general liability policy be on a primary basis. Therefore, to the extent Union Station has its own separate insurance policy, such policy would be primary and the Cincinnati Policy would be excess.

56. Cincinnati is also aware of an agreement ("City Agreement"), effective February 6th, 2024, between GKCSC and the City, whereby the City agreed to pay the GKCSC for its work on facilitating the Parade and Rally. A true copy of the City Agreement is attached as Exhibit D and is incorporated into this Complaint as if fully set forth herein.

57. Pursuant to the City Agreement, GKCSC (referred to in the City Agreement as "Contractor") was required to procure and maintain insurance throughout the duration of the City Agreement, insurance coverage with the City named as an additional insured. Specifically, the City Agreement requires:

A. Contractor shall procure and maintain in effect throughout the duration of this Contract insurance coverage not less than the types and amounts specified in this section. In the event that additional insurance, not specified herein, is required during the term of this Contract, Contractor shall supply such insurance at City's Cost. Policies containing a Self-Insured Retention are unacceptable to City unless City approves in writing the Contractor's Self-Insured Retention.

1) Commercial General Liability Insurance: with limits of $1,000,000 per occurrence and $2,000,000 aggregate, written on an "occurrence" basis. The policy shall be written or endorsed to include the following provisions:

a. Severability of Interests Coverage applying to Additional Insureds;

b. Contractual Liability;

c. Per Project Aggregate Liability Limit or Where not available, the aggregate limit shall be $2,000,000;

d. No Contractual Liability Limitation Endorsement; and

     e. Additional Insured Endorsement, ISO form CG20 10, current edition, or its equivalent.

2) Special Event Liability Insurance (or similar CGL policy) with limits of $1,000,000.00 per occurrence and $5,000,000.00 in the aggregate, other than completed operations, and written on an "occurrence" basis. Damage to premises coverage of $500,000.00. This policy should include a Terrorism Risk rider based on the type of event.

3) Workers' Compensation Insurance: as required by statute including Employers Liability $1,000,000 accident with limits of $1,000,000 disease-policy limit; $1,000,000 disease-each employee.

4) Commercial Automobile Liability Insurance: with a limit of $1,000,000 per occurrence, covering owned, hired, and non-owned automobiles. Coverage provided shall be on an "any auto" basis and written on an "occurrence" basis. This insurance will be written on a Commercial Business Auto form, or acceptable equivalent, and will protect against claims arising out of the operation of motor vehicles, as to acts done in connection with the Contract, by Contractor.

5) If applicable, Professional Liability Insurance with limits per claim and annual aggregate of $2,000,000. . . .

58.    The City Agreement also requires the GKCSC to defend, indemnify, and hold harmless, the City from and against all claims arising out of or resulting from all acts or omissions in connection with the City Agreement caused in whole or in part by the GKCSC. Specifically the City Agreement requires that:

C.    Contractor shall defend, indemnify and hold harmless City from and against all claims arising out of or resulting from all acts or omissions in connection with this Contract caused in whole or in part by Contractor or Contractor's Agents, regardless of whether or not caused in party by any act or omission, including negligence, of City. Contractor is not obligated under this Section to Indemnify City for the sole negligence of City.

59.    With respect to GKCSC, Cincinnati has acknowledged that the City is an additional insured. Notwithstanding, to the extent the Policy offers coverage to the City on an additional

insured basis, such coverage is subject to all other terms, conditions, and exclusions contained in the Policy.

60.     Paragraph D of the Additional Insured Endorsement expresses that any additional insured coverage provided by the Policy is excess over any other valid and collectible insurance available to the additional insured whether primary, excess, contingent or any other basis unless the GKCSC agreed in the City Agreement that the Policy's additional insured coverage be primary.  The City Agreement does not express that the required special event liability policy or similar commercial general liability policy be on a primary basis.

61.     At this time, Cincinnati is unaware of any similar agreements between GKCSC and O'Neill or Flyover that would require GKCSC to obtain an insurance policy with O'Neill or Flyover named as additional insureds.  Therefore, O'Neill and Flyover are not additional insureds under the Cincinnati Policy and therefore are not owed any coverage from Cincinnati.

62.     The Policy includes the Exclusion – Assault Or Battery Endorsement, Form CSGA 301 02 21 (hereinafter, the "A/B Exclusion").

63.     The Policy does not provide coverage for, among other things, bodily injury that "in any way, in whole or in part, arises out of an actual, threatened or alleged assault or battery whether caused by or at the instigation or direction of any insured, their employees, patrons or any other person"; failure of any insured or anyone else for whom any insured is legally responsible to prevent or suppress assault or battery; or failure to provide an environment safe from assault or battery, including but not limited to the failure to provide adequate security, or failure to warn of the dangers of the environment that could contribute to assault or battery; or negligent

employment, supervision, training, or retention of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by the A/B Exclusion.

64.     Based on the information available, and under applicable law, the bodily injuries at issue arose from the assaults referenced herein.

65.     The bodily injuries alleged in the Underlying Lawsuit are excluded by the assault and battery exclusion.

66.     Therefore, Cincinnati Policy's Assault or Battery Exclusion applies and there is no indemnity or defense owed by Cincinnati. Cincinnati has determined based on the allegations of the Petition and information ascertained in its pre- and post-suit investigation that the Cincinnati Policy's Assault or Battery Exclusion applies to preclude coverage, or potential coverage, under the Cincinnati Policy.

## COUNT I – DECLARATORY JUDGMENT

67.     Paragraphs 1 through 66 are hereby incorporated by reference.

68.     There exists an actual controversy of a judiciable nature between the parties concerning the rights and obligations of the parties to the insurance contract.

69.     This matter is ripe because there is a dispute regarding Cincinnati's exposure or duties in the settlement and/or adjudication of this matter.

70.     Cincinnati has complied with all terms, conditions, and provisions of the insurance contract.

71.     By virtue of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations, and liabilities that exists between the parties in connection to the aforementioned Policy.

## JURY TRIAL DEMAND

72.     Pursuant to Fed. R. Civ. P. 38(b) Cincinnati hereby demands that this case be tried by a jury.

WHEREFORE, Plaintiff The Cincinnati Specialty Underwriters Insurance Company prays that this Court enter judgment in its favor and against Defendant declaring:

A.     That The Cincinnati Specialty Underwriters Insurance Company had/has no duty to defend Defendants, The Greater Kansas City Sports Commission, The City of Kansas City, Union Station Kansas City, Inc., O'Neill Events & Marketing, or Flyover Event Co. LLC under the Cincinnati Policy with respect to any claims asserted or which could have been asserted in the Underlying Lawsuit, or the losses claimed therein;

B.     That The Cincinnati Specialty Underwriters Insurance Company has no duty to indemnify or provide any other coverage to the Greater Kansas City Sports Commission, The City of Kansas City, Union Station Kansas City, Inc., O'Neill Events & Marketing, Flyover Event Co. LLC, Michael Galvan individually, Marc Lopez-Galvan individually, or Adriana Lopez-Galvan for claims, loss or damages in the Underlying Lawsuit.

C.     That The Cincinnati Specialty Underwriters Insurance Company has no duty to contribute any manner or amount to the settlement or proposed settlement of the Underlying Lawsuit; and

D.     For such other and further relief as the Court deems just, proper, and equitable.

Respectfully submitted,

LITCHFIELD CAVO LLP

By:    */s/    Michael L. Brown*
Michael L. Brown            MO #55732
Allison M. Kleinow          MO #69175
Anthony Hernandez          MO #69129
10401 Holmes Road, Suite 220
Kansas City, MO 64131
(816) 648-1400
(816) 648-1401 Fax
brown@litchfieldcavo.com
Kleinow@litchfieldcavo.com
Hernandeza@litchfieldcavo.com
ATTORNEYS FOR PLAINTIFF
THE CINCINNATI SPECIALTY
UNDERWRITERS INSURANCE COMPANY

23